# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE
# AT KNOXVILLE

| | |
|---|---|
| LOUIS J. SMITH and ) | |
| JESSIE D. FREEMAN, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No. 3:08-cv-48 |
| ) | (Phillips/Guyton) |
| JAMES HARRISON, SAM'S CLUB, and ) | |
| CARGILL MEAT SOLUTIONS ) | |
| CORPORATION, ) | |
| ) | |
|     Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' Motion to Remand [Doc. 13] and defendants' response in opposition thereto [Doc. 14]. For the reasons that follow, the motion is **GRANTED**.

**I.    BACKGROUND**

The facts of this case are in dispute. Plaintiffs purchased frozen ground beef patties from Sam's East, Inc. ("Sam's")[1] in Knoxville, Tennessee, on or about September 27, 2007. The next day, plaintiffs learned of a recall of Wal-Mart ground beef due to E-coli contamination. Concerned about the safety of the beef they had recently purchased, plaintiffs telephoned Sam's and requested to speak with the "Meat Manager." Plaintiffs were directed to defendant James Harrison, an Assistant Manager in the "Fresh Foods Area" of Sam's. Plaintiffs allege that Mr. Harrison assured them the meat was safe and that Sam's did not purchase their ground beef from the same company as Wal-Mart. Based on this information, plaintiffs cooked and ate the meat. Later that day,

---

[1] Defendants state that the entity named in the complaint as "Sam's Club" is truly "Sam's East, Inc."

-1-

plaintiffs allege they fell ill with common symptoms of food poisoning.

Plaintiffs claim they called Sam's to report their illness the day after they fell ill, on or about September 30, 2007, at which time no one was available to speak to them, and once on October 1, 2007. On this later date, plaintiffs allege that they were again told that the meat purchased was not part of the recall. Plaintiffs allege they filed, or believed they were filing, an incident report at this time. Subsequently, on October 2 and October 3, plaintiffs allege that two employees of defendant Cargill Meat Solutions Corporation ("CMSC") contacted them to gather information for an incident report. On October 6, 2007, a recall was issued of ground beef sold at Sam's. Via another phone call to Sam's, plaintiffs filed an incident report on October 8, 2007.

Plaintiffs initiated this action on January 11, 2008, in the Circuit Court for Knox County, Tennessee, alleging claims of strict liability, negligence, and gross negligence. Defendants removed to this court on the basis of diversity jurisdiction, 28 U.S.C. § 1332. Plaintiffs now move to remand, arguing that defendants have not established complete diversity of citizenship, as plaintiffs and defendant Harrison are citizens of Tennessee.[2] Defendants argue, however, that plaintiffs have fraudulently joined defendant Harrison in order to defeat diversity of citizenship; as there is no basis under state law for imposing liability on Harrison, defendants argue, the true parties enjoy complete diversity of citizenship, and removal was proper.

In support of this argument, defendants contest several of the facts as alleged by plaintiffs. Most importantly for purposes of this motion, per a declaration of defendant Harrison, he claims not to recall speaking to either of the plaintiffs until October 6, 2007, the date of the recall of the Sam's ground beef. On this date, according to Mr. Harrison, he spoke to Mr. Freeman and prepared an

---

[2] Defendant Sam's is a citizen of Arkansas and defendant CMSC is a citizen of Kansas.

incident report immediately following their conversation. [Doc. 15 ¶ 8].

## II. ANALYSIS

28 U.S.C. § 1441 provides for removal to this court of any civil action filed in state court of which this court has original jurisdiction. 28 U.S.C. § 1441(a)(2006). Defendants premised removal on this court's original jurisdiction based on diversity of citizenship. This court "shall have jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a). This requires complete diversity of the parties, meaning "no plaintiff may be a citizen of the same state as any defendant." *Probus v. Charter Commc'ns, LLC*, 234 F. App'x 404, 407 (6th Cir. 2007). On its face this presents a problem, as defendant Harrison and plaintiffs are all citizens of Tennessee, and there is no other basis for this court's original jurisdiction over the matter. Defendants attempt to overcome this problem, however, by alleging that defendant Harrison was fraudulently joined.

"Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyata, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998), *quoted in Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999). "[I]t is the removing party's burden to demonstrate fraudulent joinder ...." *Probus*, 234 F. App'x at 406. For a claim of fraudulent joinder to succeed, it must be "clear that there can be no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quotation removed). Accordingly, "[t]o prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Coyne*, 183 F.3d at 493. Conversely, "if there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants," the court must remand. *Id.*; *see also Alexander,* 13 F.3d at 949. "All doubts

as to the propriety of removal are resolved in favor of remand." *Coyne*, 183 F.3d at 493.

Defendants argue that plaintiffs cannot recover against defendant Harrison due to Tennessee products liability law, the statutory framework of which defendants argue preempts plaintiffs' common law allegations of negligence and gross negligence. Defendants alternatively argue that plaintiffs have no basis for recovering against defendant Harrison under these common law theories. The court will address each argument in turn.

### A. Products Liability

Although plaintiffs alleged their claims against Harrison under Tennessee common law theories of negligence and gross negligence, [Doc. 1, Attach. 1 at 16-17], defendants assert that plaintiffs' claims fall within the purview of the Tennessee Products Liability Act of 1978 ("TPLA"), Tenn. Code Ann. §§ 29-28-101 to -108 (2008), as the TPLA by definition includes

> actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever ....

*Id.* § 29-28-102(6).

Defendants argue that no cause of action can be maintained against Harrison under the TPLA. The TPLA prohibits actions against sellers where "the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable case, reveal the existence of the defective condition." *Id.* § 29-28-106. Defendants initially argue that Harrison cannot be personally liable as he is not a "seller" within the meaning of the action. Alternatively, defendants argue that even if he were a seller, Harrison cannot be liable because "there is no allegation that Harrison had a reasonable opportunity to inspect the meat in a

manner that would or should have revealed the existence of the alleged defective condition. The meat was packaged and sold in sealed, opaque boxes." [Doc. 14 at 7-8.]

Defendant's first argue that defendant Harrison is not a seller within the meaning of the TPLA. The TPLA statute provides, " 'Seller' includes a retailer, wholesaler, or distributor, and means any individual or entity engaged in the business of selling a product, whether such sale is for resale, or for use or consumption." Tenn. Code Ann. § 29-28-102(7). In support of the argument that Harrison is not a seller, defendants cite to the Tennessee Supreme Court's decision in *Memphis Bank & Trust Co. v. Water Services, Inc.*, 758 S.W. 2d 525 (Tenn. 1988), in which that court held that a sales representative for a commercial and industrial water treatment corporation was not a seller within the meaning of the TPLA.

This argument, however, does not meet the burden shouldered by defendants of demonstrating that plaintiff cannot establish an action under state law against Harrison. Given the meager facts presented at this stage, which are vague at best, it is not readily clear that Harrison would not fall within the purview of this provision. Importantly, the dearth of case law interpreting the definition of "seller" under the TPLA lends to the uncertainty. It is not clear the extent to which the holding in *Memphis Bank* would apply to the instant case, and cases further clarifying the scope of a "seller" under the TPLA are apparently lacking. Given that this court must resolve all doubts in favor of plaintiff, defendants' argument must fail.

In the alternative, however, defendants argue that even if Harrison were a "seller" within the meaning of the TPLA, nevertheless a cause of action cannot be maintained against him because he did not have a reasonable opportunity to inspect the goods, a condition imposed by the statute for liability to issue.

The TPLA provides,

> No "product liability action," as defined in § 29-28-106, shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition.

Tenn. Code Ann. § 29-28-106. Defendants allege that Harrison cannot be held liable under either provision, as the meat was sold to Sam's in sealed, opaque containers and plaintiffs have not alleged that Harrison had a reasonable opportunity to inspect the meat.

Defendants ignore the fact, however, that tracking of meat products is via a serial number located on the outside of the box. This is typically how recalls of various products are conducted; indeed, defendants implicitly concede as much throughout Harrison's declaration. Harrison attests that he has inspected plaintiffs' receipt, which lists the beef's product code; this very product code is how one would verify that the beef, Item 700141, was subject to the recall. One could argue, therefore, that the tracking system of a product code on the outside of the container is the very means by which stores are afforded a "reasonable opportunity to inspect" following the recall of a product.

As the court has previously noted, because the case is in its preliminary stages, the facts are meager, and indeed those before the court are apparently at issue. The factual questions remain as to when Harrison spoke to the defendants and when the recall was issued. On the paucity of (disputed) facts before the court at this time, the court cannot, to any degree of certainty, say that Harrison was not given a reasonable opportunity to inspect the product before he spoke to the plaintiffs. The court must resolve these doubts in favor of remand, and defendants' arguments therefore fail.

    **B.**     **Common Law Negligence and Gross Negligence**

Plaintiffs pleaded their claims against Harrison under common law theories of negligence and gross negligence. Although defendants primarily argue that these claims are preempted by the TPLA, alternatively they argue that plaintiffs cannot recover against Harrison under these common law theories.

In Tennessee, "[t]o establish negligence, one must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996). To establish gross negligence, a plaintiff must, in addition to the above elements, "prove that the act was 'done with utter unconcern for the safety of others, or one done with such a reckless disregard for the rights of others that a conscious indifference to consequences is implied in law.' " *Thrasher v. Riverbend Stables*, No. M2007-01237-COA-R3-CV, 2008 WL 2165194, at *5 (Tenn. Ct. App. May 21, 2008) (quoting *Ruff v. Memphis Light, Gas, & Water Div.*, 619 S.W. 2d 526, 528 (Tenn. Ct. App. 1981)).

Given the aforementioned meagerness of the facts in this case, as well as the legal ambiguity of the extent of Harrison's duty to the plaintiffs, this court cannot say that defendants have met their burden of showing that there is "no recovery under the law of the state on the cause alleged or on the facts in view of the law." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). When faced with a claim for fraudulent joinder, this court is obligated to "resolve all disputed questions of fact and ambiguities in the controlling state law in favor of the non removing party. All doubts as to the propriety of removal are resolved in favor of remand." *Coyne v. Am. Tobacco Corp.*, 183 F.3d 488, 493 (6th Cir. 1999) (quotation and inner citation removed). Here, as the court noted above, a possible scenario emerges from the facts as alleged under which Harrison could be

held liable. Because of these ambiguities, the court finds that defendants have not met their burden of proving fraudulent joinder. The court must therefore remand the case for lack of jurisdiction.

## III. CONCLUSION

Given the standard of proving fraudulent joinder and the corresponding resolution of doubts in favor of remand, the factual and legal ambiguities in this case dictate that the case must be remanded to the state court. Accordingly, Plaintiff's Motion to Remand [Doc. 13] is **GRANTED**, whereby this action is **REMANDED** to the Circuit Court for Knox County, Tennessee for further disposition.

**IT IS SO ORDERED**.

                                       **ENTER:**

                                       s/ Thomas W. Phillips
                                   United States District Judge